# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REUBEN HENRY, | ) | |
|     Plaintiff, | ) | Civil Action No. 10-189 Erie |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | |
| DEPUTY SUPERINTENDENT | ) | |
| OVERMYER, et al, | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the motion for summary judgment filed by Defendants [ECF No. 93] be granted and that Plaintiff's motion to voluntarily dismiss Defendants Skunda, Apodaca, Sauers, Riskus, and Overmyer [ECF No. 109] be granted. The Clerk of Courts should be directed to close this case.

### II. REPORT

#### A. Relevant Procedural History

Plaintiff, a state inmate acting *pro se,* originally filed this civil rights action on August 5, 2010. Plaintiff alleges that Defendants violated his constitutional rights in various ways during his incarceration at SCI Forest from February through August of 2010.

On December 13, 2010, Plaintiff filed an Amended Complaint raising claims arising out of five separate incidents. First, Plaintiff alleges that in February of 2010, he was forced to sleep on a filthy mattress in a dirty cell for twelve days and that he subsequently developed a rash from

1

the exposure.[1] Second, Plaintiff complains that due to a lack of guards and cameras in the "concrete yard," he was assaulted by a fellow inmate in July of 2010. Third, Plaintiff complains that he was subjected to a clogged toilet in his cell for eight days in July of 2010. Next, Plaintiff claims his due process rights have been violated by Defendant Sauer who refused to provide him with copies of grievances. Finally, Plaintiff challenges the denial of his request for "Z-code" status. ECF No. 16. Named as Defendants in the Amended Complaint are: Deputy Superintendent Overmyer; Captain Riskus; Sgt. Miller; Lt. T. Murin; Lt. Jones; Correctional Officer Averall; Dr. Don Skunda; Lt. Apodaca; NP O'Rourke; and Superintendent Sauer.

Defendants filed a motion for summary judgment in September of 2012. ECF No. 93. After being given numerous opportunities and extensions of time, Plaintiff has finally filed a brief in opposition to the pending motion for summary judgment. See ECF Nos. 111, 112. At the same time, Plaintiff filed a voluntary dismissal of the claims against Defendants Skunda, Apodaca, Sauers, Riskus, and Overmyer. ECF No. 109. Defendants filed a Reply to Plaintiff's brief in opposition. ECF No. 114.

These issues are ripe for disposition by this Court.

### B. Standards of Review

#### 1. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail,

---

[1] Plaintiff has three separate claims arising out of this factual scenario. First, he claims his constitutional rights were violated by being forced to sleep in the filthy cell on a dirty mattress. Second, Plaintiff alleges that Defendants assigned him to that filthy cell in retaliation for refusing to follow orders and for seeking a single cell. Third, Plaintiff alleges that he received inadequate medical care after he developed a rash due to the filthy conditions.

2

it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2. Motion for summary judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-

movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### C. The Prison Litigation Reform Act

#### 1) The Exhaustion Requirement

Defendants move for summary judgment based on Plaintiff's failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides that:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[2] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[3]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the

---

[2] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[3] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2.     The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the

6

Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 3. Analysis of Exhaustion

In a previous Report and Recommendation, I analyzed Defendants' exhaustion argument and concluded that:

> Defendants argue that Plaintiff has only exhausted one of the claims alleged in the Amended Complaint, and accordingly that all other claims have not been exhausted and should be dismissed.
>
> Grievance Number 307887 complains about the twelve days spent sleeping on a dirty mattress and a resulting rash from those unsanitary conditions. Plaintiff appealed this grievance to the Central Office and has fully exhausted his administrative remedies as to this issue.
>
> However, Defendants argue that Plaintiff has not fully exhausted any other claim alleged in the Amended Complaint. Defendants acknowledge that Plaintiff has attempted to exhaust, but has fallen short of full exhaustion on several issues.
>
> In his Opposition Brief, Plaintiff argues that prison staff thwarted his attempts to fully exhaust by denying him copies of the grievance officer's responses to his grievances, as well as supporting exhibits.[4] ECF No. 31, page 7. Plaintiff supports this contention with pages and pages of his attempts to exhaust several different issues. See ECF No. 31.
>
> Interference with an inmate's attempts at exhaustion may impact the *availability* of the administrative remedy process within the meaning of 42 U.S.C. § 1997e. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."). See also McKinney v. Guthrie, 2009 WL 274159, at *1 (3d Cir. 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."). **Taking Plaintiff's allegations of interference as true for purposes of this motion only, it is unclear whether certain administrative remedies were available to him. Accordingly, the motion to dismiss should be denied**

---

[4] DC-ADM 804(f) – (j) provides that at the Final Review level, a failure to provide all required documentation will result in dismissal of the appeal.

7

> **at this stage of the litigation. The issue of exhaustion pursuant to the PLRA may be revisited upon a more fully developed record.**

ECF No. 60. Presently before this Court is that "more fully developed factual record," along with Defendants' motion for summary judgment.

In support of the presently pending motion for summary judgment, Defendants have provided evidence that the claims are not fully exhausted. Plaintiff has offered no contrary evidence as to the exhaustion defense, as he must in order to defeat a fully supported motion for summary judgment. See Fed.R.Civ.P. 56(c)(1)(A). According to the Declaration of Christina Kennedy, Superintendent's Assistant at SCI Forest, Plaintiff filed 17 grievances from February 17, 2010 through August 26, 2010, but very few were appealed through the final level of review. ECF No. 96-3, ¶ 3.

While Plaintiff did appeal his dirty cell/mattress issue through the final level of review, he only did so only in regard to a conditions-of-confinement claim under the Eighth Amendment. See ECF No. 96-1, pages 32-38. Plaintiff did not refer to retaliation or inadequate medical care and, accordingly, has failed to exhaust those claims stemming from this incident.[5]

As to his other claims, Plaintiff filed Grievance Number 330785 (dated August of 2010) claiming that he was assaulted in the concrete yard by a fellow inmate in July of 2010 because there was insufficient staff and/or security coverage [ECF No. 96-3, page 23; see also ECF No. 96-2, pages 31-34], and Plaintiff filed Grievance Number 328247 (dated July 29, 2010) concerning a broken toilet [ECF No. 96-3, page 23; see also ECF No. 96-2, pages 36-41]. Plaintiff also filed Grievance Number 330786 (dated August 13, 2010) requesting a single cell

---

[5] Plaintiff complains that Defendant Nurse O'Rourke examined him in the RHU rather than in the infirmary and that the cream she provided for treatment of his rash was not strong enough. ECF No. 16, ¶ 30. As Plaintiff has not exhausted his claim against her, Defendant O'Rourke should be dismissed from this case.

8

(or "Z-code status"). ECF No. 96-3, page 23. See also ECF No. 96-3, pages 8-11. None of these grievances were appealed to the final level of review.[6] Furthermore, Plaintiff has never filed any grievance regarding Superintendent Sauer's denial of copies of grievances. ECF No. 96-3, page 23.

As Plaintiff has only exhausted his Eighth Amendment claim arising out of the February 2010 dirty cell/mattress incident, summary judgment should be granted as to all other claims based upon Plaintiff's failure to exhaust.

### D. Conditions of Confinement Claim

Between Plaintiff's voluntary dismissal of some claims/Defendants and Plaintiff's failure to exhaust his administrative remedies under the PLRA, the only claim that remains is his conditions-of-confinement claim against Defendants Miller, Murin, Jones, and Averall. Plaintiff alleges that these Defendants were responsible for forcing him to sleep on a dirty mattress for twelve days in February of 2010. In the Amended Complaint, Plaintiff alleges:

> Defendants Jones, Miller, and Averall's placing Plaintiff in a dirty cell with a mattress with no vinyl covering on it, because Plaintiff refused a cellmate in a double cell, violated Plaintiff's First Amendment rights, and constituted adverse action/retaliation conduct under the First Amendment of the U.S. Constitution. Placement in this cell also amounted to punishment without due process of law, in violation of the Fourteenth Amendment of the U.S. Constitution. Placement in the cell JC-2021 also constituted cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution.

> Defendants Jones, Miller and Averall's place Plaintiff in a dirty unsanitized cell with a [sic] infested mattress with no vinyl covering on it, constituted unsafe/unsanitary prison conditions, inhumane confinement. A deliberate indifference to Plaintiff's substantial risk of harm (which result in a [sic] injury), and cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution.

---

[6] Moreover, all of these initial grievances were only filed after Plaintiff filed this lawsuit and the law is clear that administrative exhaustion must be completed **prior** to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).

9

> Defendant Murin's refusal to remove Plaintiff from unsanitary cell, and to give Plaintiff a new mattress after being informed of Plaintiff unsanitary conditions of confinement, and a deliberate indifference to Plaintiff's substantial risk of harm (which result in a [is] injury) consisted cruel and unusual punishment under the U.S. Constitution in violation of Plaintiff's Eighth Amendment rights under the U.S. Constitution. Defendants refusal to take immediate action of Plaintiff situation after being informed constituted cruel and unusual punishment and punishment without due process law in violation of the Fourteenth Amendment of the U.S. Constitution.

ECF No. 16.[7]

Under the Eighth Amendment, prisoners are constitutionally protected from cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825 (1991). But, "not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights." Booth v. King, 228 Fed.Appx 167, 171 (3d Cir. 2007). Cruel and unusual punishment will only be found "where, viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of life's necessities." Id. quoting Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir. 1990).

In the non-medical context, the Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates received adequate food, clothing, shelter, and medical care, and must "take reasonable measure to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). However, "to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In examining alleged constitutional deprivations "complained of by an inmate

---

[7] However, despite his recitation of the Fourteenth Amendment, it does not provide Plaintiff with the legal basis upon which to pursue a claim. See Ordonez v. Yost, 289 Fed.Appx 553, 555 (3d Cir. 2008) citing Graham v. Connor, 490 U.S. 386, 395 (1989) (where a due process claim is identical to an Eighth Amendment claim, the plaintiff must "bring the claim pursuant to the more explicit constitutional amendment." ).

as a result of confinement, courts must balance the legitimate rights of the prisoner with the necessary concern and responsibility of the prison authorities for security and order." Patterson v. West Virginia Regional Jail and Correctional Facility Authority, 2012 WL 3308607, at * 8 (S.D. W.Va. 2012) citing Crowe v. Leeke, 540 F.2d 740, 741 (4th Cir. 1976).

To make out an Eighth Amendment claim based on prison conditions, the plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer, 511 U.S. at 834. An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, and shelter. Rhodes, 452 U.S. at 347; see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000).

As to the first requirement, "prison conditions violate the Eighth Amendment if they result in the 'unnecessary and wanton infliction of pain,' are 'grossly disproportionate to the severity of the crime warranting imprisonment,' or result in an 'unquestioned and serious deprivation of basic human needs.'" Robinson v. Carr, 99 F.3d 1150 (Table) (10th Cir. 1991) quoting Rhodes, 452 U.S. at 346-47. The Eighth Amendment "'does not mandate comfortable prisons' and conditions imposed on prisoners may be 'restrictive and even harsh.'" Id. As to the second requirement, deliberate indifference is a difficult standard to meet: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

In support of the presently pending motion for summary judgment, Defendants have provided evidence that the mattress and cell were sanitized prior to Plaintiff's placement in the cell. ECF No. 96, Exhibits 2, 4, 6. In opposition, Plaintiff has provided contrary evidence. ECF

11

No. 112-10, pages 2-4, Affidavits of Vidal Hernandez and Marty Dunbar. In Reply, Defendants have provided further evidence in support of their position and in opposition to Plaintiff's position.

However, whether or not the cell and mattress were cleaned and sanitized prior to Plaintiff's placement is of not dispositive of the claim here. Plaintiff has not demonstrated to this Court that he was denied the "minimal civilized measure of life's necessities." Plaintiff alleges that he was forced to use a dirty mattress for a period of twelve days and that he developed a fungal rash on his groin and hands as a result. "[P]rison conditions are often less than ideal, but only extreme deprivations of life's basic necessities violate the Eighth Amendment's prohibition on cruel and unusual punishment." Lewis v. Western Regional Jail, 2012 WL 3670393, at * 8 (S.D.W.Va. 2012). See also Peterkin v. Jeffes, 855 F.2d 1021, 1026-27 (3d Cir. 1988) (holding that sleeping on a dirty mattress on the floor does not rise to the level of an Eighth Amendment violation); Wilfong v. Morris County Correctional Facility, 2006 WL 3392938 (D.N.J. 2006) (holding that allegations about dirty footwear and an unsanitized mattress were insufficient to state a claim under the Eighth Amendment standard for deliberate indifference); Robinson v. Middaugh, 1997 WL 567961 (N.D.N.Y. 1997) (holding that plaintiff's claims that he was required to sleep on an unsanitized mattress did not rise to the level of deliberate indifference or the wanton infliction of pain.); Hutto v. Rinney, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and diet of 'gruel' might be tolerable for a few days and intolerably cruel for weeks or months."); Chant v. Clark County Jail, 2012 WL 5205873, at *3 (W.D.Wash. 2012) ("Usually, a more offensive condition will be of constitutional significance when it exists for even a short time, while a less offensive condition will be of constitutional significance only

when it has existed for a much longer time. Long-term unsanitary conditions violate the Eighth Amendment …").

Even if true, a non-sanitized mattress for less than two weeks is not an extreme deprivation of life's basic necessities. Accordingly, summary judgment should be granted in favor of Defendants.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion for summary judgment filed by Defendants [ECF No. 93] be granted and that Plaintiff's motion to voluntarily dismiss Defendants Skunda, Apodaca, Sauers, Riskus, and Overmyer [ECF No. 109] be granted. The Clerk of Courts should be directed to close this case.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: March 26, 2013

13